**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

DISTRICT OF DELAWARE

Case number *(if known)* _____   Chapter __11__

☐ Check if this is an
   amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/25

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Avenger Flight Group Mexico II, S. DE R.L. DE C.V.** |
| 2. | **All other names debtor used in the last 8 years**<br>Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **AV ARCO VIAL 201 BODEGA 25**<br>**FUTURO APODACA APODACA**<br>**NUEVO LEON MEXICO CP 66600-0000** | **1450 Lee Wagener Boulevard**<br>**Fort Lauderdale, FL 33315-3558** |
| Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| County | Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **www.afgsim.com** |

6. **Type of debtor**

☐ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

■ Other. Specify: _____

Debtor   **Avenger Flight Group Mexico II, S. DE R.L. DE C.V.**          Case number (*if known*) _____
Name

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

8299

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

☒ No.
☐ Yes.

| | District _____ | When _____ | Case number _____ |
| | District _____ | When _____ | Case number _____ |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
☒ Yes.

| Debtor | Avenger Flight Group Mexico II, S. DE R.L. DE C.V. | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

| List all cases. If more than 1, attach a separate list | Debtor | **See Rider 1 attached hereto** | Relationship | **Affiliate** |
|---|---|---|---|---|
| | District | | When | Case number, if known |

**11. Why is the case filed in this district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency _____

Contact name _____

Phone _____

**Statistical and administrative information**

**13. Debtor's estimation of available funds**   .   *Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ■ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ■ $100,000,001 - $500 million | ☐ More than $50 billion |

| Debtor | **Avenger Flight Group Mexico II, S. DE R.L. DE C.V.** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

| | **Request for Relief, Declaration, and Signatures** |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    02/11/2026
_____
MM / DD / YYYY

**X**   /s/ Lawrence Perkins
_____
Signature of authorized representative of debtor

**Lawrence Perkins**
_____
Printed name

Title    **Chief Restructuring Officer**
_____

**18. Signature of attorney**

**X**   /s/ Mary F. Caloway
_____
Signature of attorney for debtor

Date    02/11/2026
_____
MM / DD / YYYY

**Mary F. Caloway**
_____
Printed name

**Pachulski Stang Ziehl & Jones LLP**
_____
Firm name

**919 North Market Street
17th Floor
Wilmington, DE 19801**
_____
Number, Street, City, State & ZIP Code

Contact phone    **302-652-4100**        Email address    **mcaloway@pszjlaw.com**

**3059 DE**
_____
Bar number and State

# RIDER 1 – AFFILIATED DEBTORS

The following list identifies all of the affiliated entities, including the Debtor filing this petition, that have filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended, substantially contemporaneously with the filing of this petition.

| | DEBTOR'S NAME | DEBTOR'S EIN |
|---|---|---|
| 1. | Avenger Flight Group, LLC | 46-1371216 |
| 2. | AFG Dallas III, LLC | 85-1245615 |
| 3. | AFG Dallas IV, LLC | 87-1435558 |
| 4. | AFG Dallas, LLC | 81-2473418 |
| 5. | AFG EU Operations Corp. | 93-2799406 |
| 6. | AFG FLL, LLC | 92-1346470 |
| 7. | AFG Latam Holding Corp. | 83-0606475 |
| 8. | AFG Latam Sim Holdings II, LLC | 83-3470473 |
| 9. | AFG Latam Sim Holdings III, LLC | 83-4262592 |
| 10. | AFG Latam Sim Holdings IV, LLC | 83-4500093 |
| 11. | AFG Latam Sim Holdings, LLC | 83-0606475 |
| 12. | AFG Latam, LLC | 82-4819545 |
| 13. | AFG Mexico Corp | 84-2731402 |
| 14. | AFG Orlando, LLC | 87-1558409 |
| 15. | AFG Sanford, LLC | 87-3226661 |
| 16. | AFG Sim Holding Corp. | 84-2483325 |
| 17. | Avenger Flight Group Europe, Corp. | 83-4375908 |
| 18. | Avenger Flight Group Topco, LLC | 99-4135643 |
| 19. | Avenger Flight Training, LLC | 47-1735640 |
| 20. | Avenger Flight Group Mexico II, S. DE R.L. DE C.V | N/A |
| 21. | Papi Flight Training, LLC | 46-3866206 |

| RESOLUCIONES UNÁNIMES ADOPTADAS FUERA DE ASAMBLEA GENERAL DE SOCIOS DE | UNANIMOUS RESOLUTIONS ADOPTED OUTSIDE GENERAL MEETING OF PARTNERS OF |
|---|---|

**AVENGER FLIGHT GROUP MÉXICO II, S. DE R.L. DE C.V.**

Los suscritos, siendo la totalidad de los socios de Avenger Flight Group México II, S. de R.L. de C.V. (la "**Sociedad**"), de conformidad con lo establecido por el artículo 82 de la Ley General de Sociedades Mercantiles y el Artículo Décimo Cuarto de los Estatutos Sociales de la Sociedad, en este acto, adoptamos unánimemente las siguientes resoluciones como si las mismas hubieran sido aprobadas en Asamblea General de Socios debidamente convocada.

The undersigned, being all of the partners of Avenger Flight Group México II, S. de R.L. de C.V. (the "**Company**"), in accordance with the provisions of Article 82 of the General Law on Commercial Companies (*Ley General de Sociedades Mercantiles*) and Article Fourteen of the Company's Bylaws, hereby unanimously adopt the following resolutions as if they had been approved at a duly convened General Meeting of Partners.

Los socios que mantienen en propiedad la totalidad de las partes sociales del capital social de la Sociedad son los siguientes:

The partners who hold all of the equity interest in the Company's capital are as follows:

| Socio/Partner | Número de Partes Sociales/Number of equity interest | Parte Fija/ Fixed portion | Parte Variable/ Variable portion | Valor/ Value |
|---|---|---|---|---|
| **AFG MEXICO CORP.** Residente fiscal en el extranjero/Tax resident abroad | 1 | $49,999.00 | - | $49,999.00 |
| **AVENGER FLIGHT GROUP LLC** Residente fiscal en el extranjero/Tax resident abroad | 1 | $1.00 | - | $1.00 |
| **TOTAL:** | 2 | $50,000.00 | - | $50,000 |

## ANTECEDENTES

Los socios de la Sociedad, AFG Mexico Corp y Avenger Flight Group LLC, así como otras afiliadas de la Sociedad, han acordado presentar una solicitud de concurso conforme al Capítulo 11, Título 11 de la Ley de Consursos de los Estados Unidos de America (*Chapter 11 of Title 11 of the United States Code*) (la "Ley de Concursos de EUA") en los tribunales concursales del Distrito de Delaware en los Estados Unidos de America ("EUA").

Avenger Flight Group Topco, LLC, otorgó ciertas resoluciones de su órgano de administración, y de los órganos de administración de las subsidiarias que se listan en dicho documento de fecha 20 de enero de 2026 cuya copia se adjunta al presente como Anexo "A" (las "Resoluciones de Topco y Subsidiarias"), en virtud de las cuales el Administrador Independiente (*Independent Manager*) y los Órganos Facultados (*Authorizing Bodies*) (tal y como se definen dichos términos en las Resoluciones de Topco y Subsidiarias nombraron a Lawrence Perkins como Director de Reestructuración ("DR") y a Ben Smith como Director de Reestructuración Suplente ("DSR") de cada una de las subsidiarias del grupo corporativo al que pertenece la Sociedad, de conformidad con la Carta de Contratación Modificada y Reexpresada de fecha 14 de enero de 2026 ("A&R EL"), cuya copia se adjunta al presente como Anexo "B".

En tal virtud, es necesario que cada una de las compañías integrantes del grupo corporativo al que pertenece la Sociedad, incluyendo la propia Sociedad, aprueban ciertas acciones a ser tomadas por cada una de ellas,

## BACKGROUND

The partners of the Company, AFG Mexico Corp and Avenger Flight Group LLC, as well as other affiliates of the Company, have agreed to file for bankruptcy protection under Chapter 11 of Title 11 of the United States Code (the "U.S. Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware in the United States of America ("U.S.").

Avenger Flight Group Topco, LLC adopted certain corporate resolutions of its independent manager and the directors and managers of its subsidiaries listed therein, dated January 20, 2026, which copy is attached hereto as Exhibit "A" (the "Resolutions of Topco and Subsidiaries") pursuant to which the Independent Manager and the Authorizing Bodies (as such terms are defined in the Resolutions of Topco and Subsidiaries) appointed Lawrence Perkins as Chief Restructuring Officer ("CRO") and Ben Smith as Deputy Chief Restructuring Officer ("Deputy CRO") of each of the subsidiaries of the Company's corporate group, in accordance with the Amended and Restated Engagement Letter dated January 14, 2026 (the "A&R EL"), a copy of which is attached hereto as Exhibit "B".

Accordingly, it is necessary for each of the companies that are part of the same corporate group than the Company, including the Company itself, to approve certain actions to be taken by each of

dentro de los procedimientos concursales antes mencionados.

them within the aforementioned bankruptcy proceedings.

## RESOLUCIONES

## RESOLUTIONS

**PRIMERA.** "SE RESUELVE aprobar el nombramiento los señores Lawrence Perkins y Ben Smith como DR y DSR, y otorgar en favor de cada uno de ellos (los "Apoderados") un poder especial con todas las facultades para pleitos y cobranzas, actos de administración y actos de dominio, a que se refieren los tres primeros párrafos del artículo 2554 del Codigo Civil Federal, el Código Civil para el Distrito Federal y sus correlativos de las demás entidades federativas de los Estados Unidos Mexicanos, para que conjunta o separadamente, los Apoderados, en nombre de la Sociedad, estén facultados para:

**FIRST.** "IT IS RESOLVED approve the appointment of Messrs. Lawrence Perkins y Ben Smith as CRO and Deputy CRO and to grant to each of them (the "Attorneys-in-Fact") a special power of attorney with all powers for litigation and collection, acts of administration, and acts of ownership, as referred to in the first three paragraphs of Article 2554 of the Federal Civil Code (*Codigo Civil Federal*), the Civil Code for the Federal District (*Código Civil para el Distrito Federal*) and its correlative provisions in the other federal entities of the United Mexican States, so that, jointly or separately, the Attorneys-in-Fact, on behalf of the Company, are empowered to:

1.   Contratar los servicios del despacho de abogados Pachulski Stang Ziehl & Jones LLP ("**PSZ&J**") como asesores legales en materia de concurso mercantil para representar y asesorar a la Sociedad en los EUA en el cumplimiento de sus obligaciones en virtud de la Ley de Concursos de EUA, y para tomar todas las acciones necesarias para proteger los derechos de la Sociedad en relación con la misma, y por la presente se autoriza a dichos apoderados a celebrar los contratos de servicios profesionales necesarios, pagar los anticipos correspondientes antes e inmediatamente después de la presentación de una solicitud de concurso mercantil, en su caso y presentar la solicitud correspondiente conforme a la Ley de Concursos de EUA para obtener la autorización para contratar los servicios de PSZ&J.

1.   Engage the services of the law firm Pachulski Stang Ziehl & Jones LLP ("**PSZ&J**") as legal advisors in bankruptcy matters to represent and advise the Company in the U.S. in complying with its obligations under U.S. Bankruptcy Code, and to take all necessary actions to protect the Company's rights in relation thereto, and hereby authorizes said attorneys-in-fact to enter into the necessary professional service agreements, pay the corresponding advances before and immediately after the filing of a bankruptcy petition, if applicable, and file the corresponding petition under the U.S. Bankruptcy Code to obtain authorization to engage the services of PSZ&J.

2.    Contratar los servicios de Sierra Constellation Partners ("**SCP**") como asesor de reestructuración de la Sociedad en EUA y, en relación con ello, se autoriza y ordena a los Apoderados a celebrar los contratos correspondientes, pagar los honorarios correspondientes antes e inmediatamente después de la presentación del concurso mercantil, y presentar la solicitud correspondiente conforme a la Ley de Concursos de EUA para obtener la autorización para contratar los servicios de SCP.

3.    Contratar los servicios de Seabury Aviation Partners LLC y Seabury Securities LLC (conjuntamente, "**Seabury**") como banco de inversión de la Sociedad y, en relación con ello, se autoriza y ordena a los Apoderados a celebrar los contratos correspondientes, pagar los honorarios correspondientes antes e inmediatamente después de la presentación del concurso mercantil, y presentar la solicitud correspondiente conforme a la Ley de Concursos de EUA para obtener la autorización para contratar los servicios de Seabury.

4.    Contratar los servicios de Kurtzman Carson Consultants, LLC dba Verita Global ("**Verita**") como agente de la Sociedad para llevar a cabo solicitudes, reclamaciones y notificaciones, y en relación con ello, se autoriza y ordena a los Apoderados a celebrar los contratos correspondientes, pagar los anticipos correspondientes antes e inmediatamente después de la presentación del concurso mercantil, y presentar la solicitud necesaria conforme a la Ley de Concursos de EUA para obtener la autorización para contratar los servicios de Verita.

5.    Contratar a cualquier otro profesional que sea necesario para ayudar a la Sociedad a cumplir con sus obligaciones en virtud de la Ley de Concursos de EUA.

2.    Engage the services of Sierra Constellation Partners ("**SCP**") restructuring advisor to the Company in the U.S. and, in connection therewith, authorize and instruct the Attorneys-in-Fact to enter into the corresponding agreements, pay the corresponding fees before and immediately after the filing of the bankruptcy petition, and file the corresponding application under the U.S. Bankruptcy Code to obtain authorization to engage the services of SCP.

3.    Engage the services of Seabury Aviation Partners LLC and Seabury Securities LLC (collectively, "**Seabury**") as the Company's investment banker and, in connection therewith, the Attorneys-in-Fact are authorized and instructed to enter into the corresponding agreements, pay the corresponding fees before and immediately after the filing of the bankruptcy petition, and file the corresponding application under the U.S. Bankruptcy Code to obtain authorization to engage the services of Seabury.

4.    Engage the services of Kurtzman Carson Consultants, LLC dba Verita Global ("**Verita**") Company's solicitation, claims, and noticing agent, and in connection therewith, the Attorneys-in-Fact are authorized and instructed to enter into the corresponding agreements, pay the corresponding fees before and immediately after the filing of the bankruptcy petition, and file the necessary application under the U.S. Bankruptcy Code to obtain authorization to engage the services of Verita.

5.    Employ any other professionals necessary to assist the Company in carrying out its duties under the U.S. Bankruptcy Code.

6. Celebrar o firmar todos los contratos, actas o documentos necesarios para llevar a cabo los actos previstos en las Resoluciones Segunda y Tercera siguientes.

Los Apoderados estarán facultados para celebrar, firmar, entregar y presentar o registrar todos los documentos, acuerdos, instrumentos, mociones, declaraciones juradas, solicitudes de aprobaciones o resoluciones de autoridades gubernamentales o reguladoras o certificados, y a tomar todas las medidas y pasos que los directivos de la Sociedad consideren necesarios o convenientes para llevar a cabo el propósito y la intención de cada una de las resoluciones anteriores y para efectuar todo lo necesario de conformidad con la Ley de Concursos de EUA.

Los Apoderados estarán facultados para tomar o hacer que se tomen todas y cada una de las demás medidas adicionales, incluyendo, entre otras, (i) la búsqueda, preparación y negociación de acuerdos, suplementos, modificaciones, consentimientos, renuncias, informes, documentos, instrumentos, solicitudes, notas o certificados adicionales que aún no se conocen pero que puedan ser necesarios, (ii) la búsqueda, preparación y negociación de cambios y adiciones a cualquier acuerdo, suplemento, modificación, consentimiento, renuncia, informe, documento, instrumento, solicitud, nota o certificado actualmente existente, (iii) la celebración, reconocimiento, entrega, cumplimiento y presentación (si procede) de cualquiera de los anteriores, y (iv) el pago de todos los derechos, tasas, impuestos, indemnizaciones y otros gastos, en cada caso según el criterio de dicho Apoderado, sean necesarios, aconsejables, convenientes o deseables para llevar a cabo plenamente la intención y cumplir los propósitos de

6. To execute or sign all agreements, minutes, or documents necessary to carry out the actions provided for in the Second and Third Resolutions below.

The Attorneys-in-Fact shall be authorized to execute, sign, deliver, and file or register all documents, agreements, instruments, motions, affidavits, applications for approvals or resolutions from governmental or regulatory authorities, or certificates, and to take all measures and steps that the directors of the Company deem necessary or convenient to carry out the purpose and intent of each of the foregoing resolutions and to do all necessary things in accordance with the U.S. Bankruptcy Code.

The Attorneys-in-Fact shall be authorized to take or cause to be taken any and all other additional measures, including, without limitation, (i) the search for, preparation, and negotiation of additional agreements, supplements, amendments, consents, waivers, reports, documents, instruments, applications, notes, or certificates that are not yet known but may be necessary, (ii) seeking, preparing, and negotiating changes and additions to any currently existing agreement, supplement, amendment, consent, waiver, report, document, instrument, application, note, or certificate, (iii) the execution, acknowledgment, delivery, compliance, and filing (if applicable) of any of the foregoing, and (iv) the payment of all duties, fees, taxes, indemnities, and other expenses, in each case at the discretion of said Attorney-in-Fact, that are necessary, advisable, convenient, or desirable to fully carry out the intent and fulfill the purposes of these Resolutions and all actions, executions, deliveries, presentations, and payments made at

estas Resoluciones y todas las acciones, ejecuciones, entregas, presentaciones y pagos realizados en cualquier momento en relación con las transacciones contempladas en las Resoluciones anteriores quedan aprobados, adoptados, ratificados y confirmados en todos los aspectos como actos y hechos de la Sociedad, respectivamente, como si se hubieran establecido específicamente en estas Resoluciones.

any time in connection with the transactions contemplated in the foregoing Resolutions are hereby approved, adopted, ratified, and confirmed in all respects as acts and deeds of the Company, respectively, as if they had been specifically set forth in these Resolutions.

Los Apoderados gozarán de poderes generales para pleitos y cobranzas, actos de administración y actos de dominio en términos de los tres primeros párrafos del artículo 2554 del Código Civil Federal y sus correlativos en los Códigos Civiles de los Estados de la República Mexicana, incluyendo cualesquiera poderes que requieran cláusula especial en términos del artículo 2587 del mismo ordenamiento y sus correlativos en los Códigos Civiles de los Estados de la República Mexicana, que sean necesarios a efecto de cumplir con el propósito para el cual es otorgado.

The Attorneys-in-Fact shall enjoy general powers for litigation and collection, acts of administration, and acts of ownership in accordance with the first three paragraphs of Article 2554 of the Federal Civil Code (*Codigo Civil Federal*), and its correlative provisions in the Civil Codes of the States of the Mexican Republic, including any powers that require a special clause in accordance with Article 2587 of the same code and its counterparts in the Civil Codes of the States of the Mexican Republic, which are necessary to fulfill the purpose for which it is granted.

**SEGUNDA**. "SE RESUELVE que los Apoderados estén facultados para obtener financiamiento posterior al concurso según los términos que pueda negociar la administración de la Sociedad, incluyendo líneas de crédito con garantías sin desposesión o el uso de garantías en efectivo; y a suscribir cualquier garantía y a pignorar y otorgar gravámenes sobre sus activos, según lo contemplado o exigido en los términos de dicho financiamiento posterior a la solicitud de concurso o acuerdo de garantías en efectivo; y, en relación con ello, se autoriza y ordena a los Apoderados a celebrar los contratos de préstamo, acuerdos de garantías en

**SECOND**. "IT IS RESOLVED that the Attorneys-in-Fact shall be authorized to obtain post-bankruptcy financing on terms that may be negotiated by the management of the Company, including lines of credit with non-possessory guarantees or the use of cash collateral; and to execute any guarantee and to pledge and grant liens on its assets, as contemplated or required under the terms of such post-bankruptcy financing or cash collateral agreement; and, in connection therewith, the Attorneys-in-Fact are authorized and directed to execute such loan agreements, cash collateral agreements and related ancillary documents as may be necessary or convenient."

efectivo y documentos accesorios que sean necesarios o covenientes."

**TERCERA**. "SE RESUELVE que, a juicio de los socios, es conveniente y beneficioso para la Sociedad que esta venda la mayor parte de sus activos y, por lo tanto, se autoriza a la Sociedad a celebrar un contrato de compraventa de activos para llevar a cabo dicha venta en los términos que la administración de la Sociedad determine que maximicen su valor, y se autoriza además a la Sociedad a presentar una moción, en términos de la Ley de Concursos de EUA, para aprobar dicha venta y cualquier medida relacionada, o para aprobar una venta al postor más alto y mejor, y a cerrar dicha venta."

**THIRD**. "IT IS RESOLVED that, in the opinion of the partners, it is desirable and beneficial for the Company to sell most of its assets and, therefore, the Company is authorized to enter into an asset purchase agreement to carry out such sale on terms that the Company's management determines will maximize its value, and the Company is further authorized to file a motion, under the terms of the U.S. Bankruptcy Code, to approve such sale and any related measures, or to approve a sale to the highest and best bidder, and to close such sale."

**CUARTA**. "SE RESUELVE que todos los actos, acciones y operaciones relacionadas con los asuntos contemplados en las Resoluciones anteriores realizados en nombre y representación de la Sociedad, incluso aquellos actos que se hubieren realizado antes de la adopción de estas Resoluciones, quedan por la presente aprobados y ratificados en todos sus aspectos como actos de la Sociedad."

**FOURTH**. "IT IS RESOLVED that all acts, actions, and operations related to the matters contemplated in the foregoing Resolutions carried out on behalf of and in representation of the Company, including those acts that may have been carried out prior to the adoption of these Resolutions, are hereby approved and ratified in all respects as acts of the Company."

**QUINTA**. "SE RESUELVE aprobar la designación de los señores Luis Gerardo Lemus Burguete y Leonardo Alonso Corbiere para actuar como Delegados Especiales de estas Resoluciones, a efecto de que cualquiera de ellos, ya sea de manera conjunta o separada, en nombre y representación de la Sociedad, lleven a cabo lo siguiente: (i) comparezcan ante fedatario público de su elección para protocolizar en todo o parte el texto de estas Resoluciones; (ii) expidan las certificaciones de estas Resoluciones; y (iii) en general, lleven a cabo todos y cada uno de los actos necesarios o convenientes para que se formalicen y ejecuten debidamente estas Resoluciones."

**FIFTH**. "IT IS RESOLVED to approve the appointment of Luis Gerardo Lemus Burguete and Leonardo Alonso Corbiere to act as Special Delegates for these Resolutions, so that either of them, either jointly or separately, on behalf of and representing the Company, may carry out the following: (i) appear before a notary public of their choice to record all or part of the text of these Resolutions; (ii) issue the certifications of these Resolutions; and (iii) in general, carry out each and every one of the acts necessary or convenient for these Resolutions to be duly formalized and executed."

Los suscritos, siendo la totalidad de los socios de la Sociedad, firman estas Resoluciones, que podrán ser formalizadas en uno o más ejemplares, cada uno de los cuales se considerará un original, el día___ 10 de febrero de 2026.

The undersigned, being all of the partners of the Company, sign these Resolutions, which may be formalized in one or more copies, each of which shall be considered an original, on February 10, 2026.

*[resto de la página intencionalmente en blanco – sigue hoja de firmas/rest of the page intentionally left blank – signature sheet follows]*

**AFG MEXICO CORP.**                          **AVENGER FLIGHT GROUP LLC**

Por/By: _____             Por/By: _____
Nombre/Name: Elsa Charlotte Gagnon Robinet   Nombre/Name: Elsa Charlotte Gagnon Robinet
Cargo/ Position: SVP                          Cargo/ Position: Manager

[*Hoja de firmas correspondiente a las resoluciones unánimes de socios de Avenger Flight Group México II, S. de R.L. de C.V.]. / Signature page corresponding to the unanimous resolutions of the partners of Avenger Flight Group Mexico II, S. de R.L. de C.V.*]

**Anexo A / Exhibit A**

OMNIBUS WRITTEN CONSENT AND APPROVAL
BY THE INDEPENDENT MANAGER
OF
AVENGER FLIGHT GROUP TOPCO, LLC
AND THE DIRECTORS AND MANAGERS OF ITS SUBSIDIARIES

January 20, 2026

The undersigned, being the independent manager of **AVENGER FLIGHT GROUP TOPCO, LLC**, ("**Topco**"), a Delaware limited liability company, and all of the members of the boards of directors or managers, as applicable (each, an "**Authorizing Body**" and, collectively, the "**Authorizing Bodies**") of each of the other entities listed on Exhibit A hereto, (each a "**Company**", and collectively, the "**Companies**"), pursuant to the applicable laws of the jurisdiction in which each such Company is organized or incorporated, as applicable, and the applicable governing documents of the Companies (collectively, the "**Governing Documents**"), acting by written consent in lieu of a meeting, do hereby unanimously consent to the adoption of the following resolutions (the "**Resolutions**") and direct that this action by unanimous written consent (this "**Written Consent**") be filed in the records of the Companies. The undersigned hereby agree that the Resolutions set forth below shall be deemed to have been adopted to the same extent, and to have the same force and effect, as though adopted at a meeting of the Authorizing Body of each Company, duly called and acting upon proposals to adopt such Resolutions.

RECITALS:

**WHEREAS,** pursuant to that certain Action by Written Consent of the Lender Representative of Topco, effective as of January 12, 2026, Hooman Yazhari has been designated as the independent and sole Manager of Topco (the "**Independent Manager**");

**WHEREAS,** pursuant to Topco's Second Amended and Restated Limited Liability Company Agreement dated as of December 2, 2025, and the foregoing action of the Lender Representative, Topco is managed, governed, administered, regulated, operated and controlled by the Independent Manager;

**WHEREAS,** Topco is the sole member of Avenger Flight Group, LLC ("**AFG**"), which in turn is the sole member or sole stockholder, as applicable, of each of the other Companies listed on Exhibit A hereto (collectively, together with AFG, the "**U.S. Subsidiaries**" and, together with Topco, the "**U.S. Company Group**");

**WHEREAS,** certain managers, directors and officers of the U.S. Company Group have been removed from their positions and others have been appointed in their stead;

**WHEREAS,** pursuant to this Written Consent, the Independent Manager and the Authorizing Bodies desire to formalize, approve and ratify (i) the removal of certain former managers, directors and officers of the U.S. Company Group and (ii) the appointment of their replacements;

**WHEREAS**, additionally, the Independent Manager and the Authorizing Bodies desire to appoint Lawrence Perkins as the Chief Restructuring Officer (the "**CRO**") and Ben Smith as the Deputy Chief Restructuring Officer (the "**Deputy CRO**") of each of the Companies pursuant to that certain Amended and Restated Engagement Letter dated January 14, 2026 (the "**A&R EL**"); and

**WHEREAS**, from and after the date hereof, the U.S. Company Group's officers, directors and managers are the persons reflected on Exhibit B (the "**Current Directors, Officers and Managers**") and no other person shall be considered an officer, director or manager of any of the entities in the U.S. Company Group.

RESOLUTIONS:

The following resolutions are hereby adopted by the Companies:

**NOW, THEREFORE, BE IT RESOLVED**, that the Independent Manager and the Authorizing Bodies hereby approve, consent and ratify the appointment of the Current Directors, Officers and Managers of the Companies as set forth on Exhibit B;

**FURTHER RESOLVED**, that the Independent Manager and the Authorizing Bodies hereby approve, consent and ratify the appointment of the CRO and Deputy CRO of each of the Companies pursuant to the terms of the A&R EL;

**FURTHER RESOLVED**, that the Independent Manager and the Authorizing Bodies hereby approve, consent and ratify the removal and termination of any former officer, director or manager not listed on Exhibit B;

**FURTHER RESOLVED**, that each of the Current Directors, Officers and Managers is hereby authorized and directed to do (or cause to be done) all such other further acts and things as may be necessary, appropriate, proper, advisable, incidental, desirable and/or convenient in connection with the actions approved pursuant to this Written Consent, and to fully effectuate the actions and transactions provided for in, or contemplated by, the foregoing resolutions;

**FURTHER RESOLVED**, that any and all actions and transactions described in the foregoing Resolutions, and all actions, decisions and transactions previously taken, conducted and carried-out by the Independent Manager and/or any of the Current Directors, Officers and Managers, acting in their capacities as directors, officers or managers, as applicable, or their appointed agents and the prior acts of each of them, on behalf of any of the entities in the U.S. Company Group, in connection with the actions contemplated by the foregoing resolutions (which are in conformity with the purpose and intent of the foregoing resolutions) are hereby approved, confirmed and ratified in all respects; and it is

**FURTHER RESOLVED**, that this Written Consent may be executed in one or more counterparts, including by any form or format of electronic delivery, each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same document and instrument.

2

The undersigned persons have duly executed and delivered this Written Consent as of the date first written above.

**INDEPENDENT MANAGER:**

_____
Hooman Yazhari (Jan 21, 2026 10:56:06 EST)

Hooman Yazhari, as the Independent Manager of Avenger Flight Group Topco, LLC, which is the sole member of Avenger Flight Group, LLC, which, in turn, is the sole member of AFG Dallas III, LLC; AFG Dallas IV, LLC; AFG Dallas, LLC; AFG FLL, LLC; AFG Latam Sim Holdings II, LLC; AFG Latam Sim Holdings III, LLC; AFG Latam Sim Holdings IV, LLC; AFG Latam Sim Holdings, LLC; AFG Latam, LLC; AFG Orlando, LLC; AFG Sanford, LLC; Avenger Flight Training, LLC; and Papi Flight Training, LLC

**DIRECTORS AND MANAGERS:**

**AFG EU Operations Corp**

_____
Eduardo Carrasco
Director

_____
Elsa Gagnon
Elsa Gagnon
Director

**AFG Latam Holding Corp.**

_____
Eduardo Carrasco
Director

_____
Elsa Gagnon
Elsa Gagnon
Director

The undersigned persons have duly executed and delivered this Written Consent as of the date first written above.

**INDEPENDENT MANAGER:**

_____

Hooman Yazhari, as the Independent Manager of Avenger Flight Group Topco, LLC, which is the sole member of Avenger Flight Group, LLC, which, in turn, is the sole member of AFG Dallas III, LLC; AFG Dallas IV, LLC; AFG Dallas, LLC; AFG FLL, LLC; AFG Latam Sim Holdings II, LLC; AFG Latam Sim Holdings III, LLC; AFG Latam Sim Holdings IV, LLC; AFG Latam Sim Holdings, LLC; AFG Latam, LLC; AFG Orlando, LLC; AFG Sanford, LLC; Avenger Flight Training, LLC; and Papi Flight Training, LLC

**DIRECTORS AND MANAGERS:**

**AFG EU Operations Corp**

Eduardo Carrasco (Jan 22, 2026 10:10:02 EST)
_____
Eduardo Carrasco
Director

_____
Elsa Gagnon
Director

**AFG Latam Holding Corp.**

Eduardo Carrasco (Jan 22, 2026 10:10:02 EST)
_____
Eduardo Carrasco
Director

_____
Elsa Gagnon
Director

**AFG Mexico Corp.**

Eduardo Carrasco (Jan 22, 2026 10:10:02 EST)
Eduardo Carrasco
Director

Elsa Gagnon
Director

**AFG Sim Holding Corp.**

Eduardo Carrasco (Jan 22, 2026 10:10:02 EST)
Eduardo Carrasco
Director

Elsa Gagnon
Director

**Avenger Flight Group Europe, Corp.**

Eduardo Carrasco (Jan 22, 2026 10:10:02 EST)
Eduardo Carrasco
Director

Elsa Gagnon
Director

4

**AFG Mexico Corp.**

_____
Eduardo Carrasco
Director

*Elsa Gagnon*
_____
Elsa Gagnon
Director

**AFG Sim Holding Corp.**

_____
Eduardo Carrasco
Director

*Elsa Gagnon*
_____
Elsa Gagnon
Director

**Avenger Flight Group Europe, Corp.**

_____
Eduardo Carrasco
Director

*Elsa Gagnon*
_____
Elsa Gagnon
Director

4

<u>Exhibit A</u>
**U.S. Company Group**

1.  Avenger Flight Group Topco, LLC
2.  Avenger Flight Group, LLC
3.  AFG Latam Holding Corp.
4.  AFG Latam Sim Holdings, LLC
5.  AFG Latam Sim Holdings II, LLC
6.  AFG Latam Sim Holdings III, LLC
7.  AFG Latam Sim Holdings IV, LLC
8.  AFG Latam, LLC
9.  AFG Sim Holding Corp.
10. AFG Dallas, LLC
11. AFG Dallas III, LLC
12. AFG Dallas IV, LLC
13. AFG EU Operations Corp.
14. AFG FLL, LLC
15. AFG Orlando, LLC
16. AFG Sanford, LLC
17. Papi Flight Training, LLC
18. Avenger Flight Training, LLC
19. AFG Mexico Corp
20. Avenger Flight Group Europe, Corp.

**Exhibit B**
**Current Managers, Directors and Officers**

1. Avenger Flight Group Topco, LLC
   - Hooman Yazhari – Independent Manager
   - Lawrence Perkins – Chief Restructuring Officer
   - Ben Smith – Deputy Chief Restructuring Office

2. Avenger Flight Group LLC:
   - Hooman Yazhari – Independent Manager
   - Eduardo Carrasco – Chief Executive Officer
   - Marc Sullivan – Chief Financial Officer
   - Elsa Gagnon – Senior Vice President and General Counsel
   - Lawrence Perkins – Chief Restructuring Officer
   - Ben Smith – Deputy Chief Restructuring Officer

3. AFG Latam Holding Corp.:
   - Eduardo Carrasco – Director
   - Elsa Gagnon – Director
   - Lawrence Perkins – Chief Restructuring Officer
   - Ben Smith – Deputy Chief Restructuring Office

4. AFG Latam Sim Holdings, LLC:
   - Eduardo Carrasco – Manager
   - Elsa Gagnon – Manager
   - Lawrence Perkins – Chief Restructuring Officer
   - Ben Smith – Deputy Chief Restructuring Office

5. AFG Latam Sim Holdings II, LLC:
   - Eduardo Carrasco – Manager
   - Elsa Gagnon – Manager
   - Lawrence Perkins – Chief Restructuring Officer
   - Ben Smith – Deputy Chief Restructuring Office

6. AFG Latam Sim Holdings III, LLC:
   - Eduardo Carrasco – Manager
   - Elsa Gagnon – Manager
   - Lawrence Perkins – Chief Restructuring Officer
   - Ben Smith – Deputy Chief Restructuring Office

7. AFG Latam Sim Holdings IV, LLC:
   - Eduardo Carrasco – Manager
   - Elsa Gagnon – Manager
   - Lawrence Perkins – Chief Restructuring Officer
   - Ben Smith – Deputy Chief Restructuring Office

6

8.  AFG Latam, LLC:
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

9.  AFG Sim Holding Corp.:
    - Eduardo Carrasco – Director
    - Elsa Gagnon – Director
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

10. AFG Dallas, LLC:
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

11. AFG Dallas III, LLC:
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

12. AFG Dallas IV, LLC:
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

13. AFG EU Operations Corp.:
    - Eduardo Carrasco – Director
    - Elsa Gagnon – Director
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

14. AFG FLL, LLC:
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

15. <u>AFG Orlando, LLC:</u>
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

16. <u>AFG Sanford, LLC:</u>
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

17. <u>Papi Flight Training, LLC:</u>
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

18. <u>Avenger Flight Training, LLC:</u>
    - Eduardo Carrasco – Manager
    - Elsa Gagnon – Manager
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

19. <u>AFG Mexico Corp:</u>
    - Eduardo Carrasco – Director
    - Elsa Gagnon – Director
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

20. <u>Avenger Flight Group Europe, Corp.:</u>
    - Eduardo Carrasco – Director
    - Elsa Gagnon – Director
    - Lawrence Perkins – Chief Restructuring Officer
    - Ben Smith – Deputy Chief Restructuring Office

**<u>Anexo "B" / Exhibit "B"</u>**



January 14, 2026

Hooman Yazhari
Chairman
Avenger Flight Group
1450 Lee Wagener Blvd
Fort Lauderdale, FL 33315

***VIA EMAIL***

Re: Terms of Engagement of SierraConstellation Partners LLC to Provide Chief
Restructuring Officer and CRO Support

Dear Mr. Yazhari:

This letter amends and restates the letter dated May 7, 2025 (as amended prior to the date
hereof, the "Prior Agreement") and sets forth the updated agreement between Avenger
Flight Group and its subsidiaries (collectively, the "Company" or "you") and
SierraConstellation Partners LLC ("SCP" and "we"). This letter (the "Engagement Letter")
together with the Standard Terms and Conditions (the "Standard Terms") annexed hereto
and incorporated by reference (collectively, the "Agreement") sets forth the terms of our
engagement and supersedes the Prior Agreement in its entirety as of the Effective Date.[1]

You shall, by executing this letter, engage SCP for the purposes of providing Lawrence
Perkins as Chief Restructuring Officer ("CRO") to the Company and Ben Smith as Deputy Chief
Restructuring Officer (the "Deputy CRO") to support the CRO (collectively, the
"CRO Support" and, together with the CRO, collectively, the "SCP Personnel") with respect
to business advice and consultation regarding the Company's current challenges. The CRO
and Deputy CRO will also work with you toward the implementation of whatever strategies
are most appropriate to achieve your objectives. On or about the Effective Date (as defined
in the Standard Terms), SCP shall commence providing services in the following areas (the
"CRO Phase Services," and together with services provided under the Prior Agreement, the
"Services"):

- SCP shall make the CRO available to the Company, to be named the
  Company's CRO by the board of directors of Company (the "Board");

- SCP will also provide CRO Support to provide assistance to the CRO, the
  Company and Board from time to time;

- The CRO shall have such duties as the Board determines from time to time;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Standard Terms.

Avenger Flight Group
January 14, 2026

- Provide oversight and assistance with the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of proposed transactions;

- Communicate with lenders directly regarding financial performance, strategy, and/or other topics relevant to the scope of this assignment;

- Provide support and assistance in connection with communications and negotiations with constituents including trade vendors, investors and other critical constituents to the successful execution of the Company's near-term business plan;

- Provide assistance in the management of schedules, reporting, and other materials required in connection with a court-based proceeding;

- Provide support related to the Company's operations and cash flow management during the bankruptcy process;

- Interact with unsecured creditor committee and assist in the prepare of management report and related communications;

- Provide testimony and serve as support to the responsible part in connection with reporting and other requirements in bankruptcy court;

- Provide insights and support in conjunction with the preparation, negotiation, and defense of plan of reorganization; and

- Perform such other services as requested or directed by the Company.

SCP shall provide such other services as may be agreed to by SCP and the Company in writing based on discussions with you as the engagement progresses and additional information is obtained during the course of the engagement.

SCP's fees for the CRO Services will be billed at the rates set forth below. The Company will increase the "evergreen" retainer balance of approximately $35,000 held by SCP in connection with the Prior Agreement to $100,000 upon the execution of this Agreement (the "Retainer"), and the Retainer will continue to be held by SCP as an advance towards Services and Reimbursable Expenses and applied as set forth in the Standard Terms.

| | |
|---|---|
| Chief Restructuring Officer, Lawrence Perkins: | $1100/hr. |
| Deputy Chief Restructuring Officer, Ben Smith: | $615/hr. |
| Partners: | $850/hr. to $1,300/hr. |
| Managing Directors: | $700/hr. to $775/hr. |
| Senior Directors: | $615/hr. to $680/hr. |
| Directors: | $470/hr. to $475/hr. |

Avenger Flight Group
January 14, 2026

| | |
|---|---|
| Senior Associates: | $370/hr. |
| Associates: | $295/hr. |
| Analysts: | $260/hr. |

If the foregoing represents your agreement, please sign the enclosed copy of this letter in the space provided and return it to me; or if you have any questions, please call me at (213) 289-9061. By signing this letter, you represent and warrant that the Client has the authority to enter into this engagement letter on behalf of itself and its subsidiaries. We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

SierraConstellation Partners LLC

By:  _____
     Lawrence Perkins (Jan 21, 2026 09:47:46 CST)
     **Lawrence Perkins, CEO & Founder**

Agreed and Accepted by:
**Avenger Flight Group**

By:  _____
     Hooman Yazhari (Jan 21, 2026 10:53:11 EST)

Name:  Hooman Yazhari_____

Title:  Chairman_____

Date:  _____

Avenger Flight Group
January 14, 2026

## Standard Terms & Conditions

The terms and conditions set forth below (the "Standard Terms") are incorporated by reference into that certain Engagement Letter by and between SierraConstellation Partners LLC ("SCP") and Avenger Flight Group (the "Company") dated as of January 14, 2026 (the "Engagement Letter" and together with the Standard Terms, the "Agreement").

### EFFECTIVE DATE, FEES AND EXPENSES

1.  <u>Effective Date.</u> As used in the Agreement, the term "Effective Date" shall mean the date upon which: (a) SCP receives the Engagement Letter signed by a person at the Company with the authority to enter into the Agreement and bind the Company, including, as applicable, confirmation that the necessary resolutions of the Company's board of directors or officers appointing SCP to provide Company with the CRO and obligating the Company to indemnify and hold such CRO harmless have been obtained, (b) SCP is holding the Retainer in the amount set forth in the Engagement Letter, and (c) either (i) the Company obtains the D&O policy naming the CRO as an insured or (ii) the Company adds the CRO to its existing D&O policy; whichever is acceptable to SCP.

2.  <u>Invoices.</u> SCP will provide an invoice for Services to Company on a weekly basis (the "Invoice"). Each Invoice will provide sufficient details identifying the Services rendered and the Reimbursable Expenses incurred.

3.  <u>Payment of Invoices and Replenishment of Retainer.</u> Payment of each Invoice is due upon receipt by Company and shall be deducted from the Retainer as and when issued by SCP. Company shall maintain the "evergreen" nature of the Retainer by replenishing the Retainer by wire transfer within three (3) Business Days of the issuance of an Invoice. If the Retainer is not replenished in full when due, you agree that SCP has the rights and options, in its discretion until the Retainer is replenished and/or all outstanding Invoices are paid in full: (i) to suspend or terminate Services and/or (ii) withhold delivery of Services, testimony, Deliverables (as defined herein), reports or data (written or oral); in which event you agree that the CRO and SCP will not be liable for any resulting losses, damages or expenses in connection with or resulting from such suspension, withholding or termination of Services or any delay in completion of or performance of the Services or compliance with any deadlines or timelines related to the Services.

4.  <u>Adjustment of Hourly Rates.</u> In the ordinary course of business, SCP revises the hourly rates of SCP Professionals set forth in the Engagement Letter (the "Hourly Rates") to reflect changes in responsibilities, increased experience, geographical differentials and increased costs of providing the Services (collectively, the "Adjusted Rates"). Company agrees to pay the Adjusted Rates as and when same are implemented.

5.  <u>Reimbursable Expenses.</u> SCP will be reimbursed timely by you for any and all reasonable, actual out-of-pocket expenses incurred in connection with or related to the Services, including but not limited to the fees and expenses of counsel retained by SCP to advise SCP on Services that concern the Company, airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs (collectively, the "Reimbursable Expenses").

6.  <u>Taxes.</u> Company shall be responsible for any taxes imposed on the Services or on the Engagement, other than taxes imposed by employment withholding for SCP Personnel or on SCP income or property.

### INFORMATION, ASSISTANCE AND DELIVERABLES

7.  <u>Information, Access to Information.</u> The Company shall use all reasonable efforts to: (i) provide SCP Personnel with access to Company management and other representatives of the Company; and (ii) furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that SCP Personnel request in connection with and in furtherance of their performance of the Services. SCP Personnel shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished to SCP and SCP Personnel by or on behalf of the Company and otherwise reviewed by SCP Personnel in connection with the Services. Company acknowledges and agrees that SCP Personnel are not responsible for the accuracy or completeness of such information and shall not be responsible to Company or any third party for any inaccuracies or omissions therein. SCP is under no obligation to update data submitted to SCP or to review any other areas of the Company's business or operations unless specifically set forth in the Engagement Letter or as mutually agreed by and between Company and SCP in writing. The source of such information, whether the Company management or other third party, as the case may be, shall be responsible for any and all financial information provided to SCP pursuant to this Agreement. Furthermore, unless specifically retained to do so, SCP will not independently examine, compile or verify any financial information provided to SCP by the Company and/or Company management, as the case may be. You shall use reasonable skill, care and attention to ensure that all information and documentation we may reasonably require is provided to us on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us promptly if you subsequently learn that the information provide is outdated, incorrect or inaccurate or otherwise should not be relied upon; and, in addition, you may not rely upon any Deliverable that contains outdated, incorrect or inaccurate information which you know or have reason to believe is outdated, incorrect or inaccurate.

8.  <u>Cooperation and Responsibilities.</u> Company shall cooperate with SCP in the performance of the Services. The Company shall be responsible for, among other things (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to SCP for purposes of the performance of the Services, (c) designating a competent, responsible person to oversee the Services (d) evaluating the adequacy and results of the Services, (e) accepting responsibility for the results of the Services, and (f) establishing and maintaining internal controls, including monitoring ongoing activities. SCP's performance is

Avenger Flight Group
January 14, 2026

dependent upon the timely and effective satisfaction of Company's responsibilities hereunder and timely decisions and approvals of Company in connection with the Services.

9.  Forward-Looking Statements.  You understand that the Services may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and statements. Moreover, SCP will be relying upon information provided by the Company in the preparation of those projections and other forward-looking statements.

10.  Deliverables.  The tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") are complete only when presented in their entirety and only for the purpose stated therein. Furthermore, (i) neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion; (ii) SCP will not provide any legal advice or address any questions of law, and (iii) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA"), the Public Company Accounting Oversight Board (the "PCAOB"), or other state or federal professional or regulatory body. Upon full payment to SCP hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified in the Deliverables shall become the property of Company.

LIMITATIONS ON SERVICES

11.  Use and Purpose of Advice and Deliverables.  Any advice given, communication (oral or written), report or Deliverable issued by SCP is provided solely for the use and benefit of Company and only in connection with the Services. Unless required by law or with the prior consent of SCP, Company shall not share or disclose any advice given, communication, report or Deliverable to any third party (a "Third Party") or refer to the Services. Neither the Services nor any Deliverables are intended for the express or implied benefit of any Third Party. Unless otherwise agreed to in writing by SCP, no Third Party is entitled to rely in any manner or for any purpose on the Services or Deliverables. Regardless of whether consent has been provided by SCP or disclosure is mandated as a matter of law or disclosure is made in violation of the Standard Terms, under no circumstances shall SCP assume any responsibility to any Third Party to whom any such advice, communication, report or Deliverable is disclosed or otherwise made available. The Services and this Engagement do not create privity between SCP and any Third Party.

12.  No Audit, Review or Compilation.  Company acknowledges and agrees that SCP is not being retained to, and SCP Personnel are not being requested to, perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of AICPA, the SEC or other state or federal professional or regulatory body.

13.  No Assurances.  The Services will not result in the issuance of any written or oral communications by SCP to Company or any Third Party expressing any opinion, conclusion, or any other form of assurance with respect to, among other things, accounting policies, financial data, financial statements and related footnotes, appropriate application of generally accepted accounting principles, disclosure, operating or internal controls, compliance with the rules and regulations of the SEC or the PCAOB, compliance with the Sarbanes-Oxley Act of 2002 and related rules and regulations, or any other matters our services cannot be relied upon to disclose errors or fraud should they exist. The Services to be provided by SCP will **not** include any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. Company expressly acknowledges that SCP does not guarantee, warrant, or otherwise provide any assurances regarding the outcome of any of Company's strategies or objectives as set forth in this Agreement.

14.  No Assessment of Other Professional's Work.  The Services may include access to the work of other professional advisors or to financial statements or financial information or data reported on by such other professional advisors. Company agrees that such access is not for the purpose of affirming or evaluating the procedures or professional standards used by such other professional advisors. In this regard, we call your attention to the possibility that other professional advisors may perform procedures concerning the same information or data, and perhaps the same accounts and records, and reach different observations than SCP for a variety of reasons, including the possibilities that additional or different information or data might be provided to them that was not provided to SCP, that they might perform different procedures from SCP, or that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

15.  Strategic Decisions.  Neither SCP nor any SCP Personnel, assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. SCP and SCP Personnel shall be responsible for implementation only of the Services and only to the extent and in the manner directed and authorized by Company.

16.  Limitations on Warranties.  This is a services engagement. SCP warrants that it shall perform the Services in good faith and with due professional care. SCP DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

17.  Limitations on Damages.  SCP, its subsidiaries and subcontractors, and their respective personnel shall not be liable to Company for any claims, liabilities, or expenses relating to this Engagement ("Company Claims") for an aggregate amount in excess of the fees paid to SCP pursuant to this Engagement, except to the extent resulting from the gross negligence, bad faith or intentional misconduct of SCP or its subcontractors. In no event shall SCP, its subsidiaries or subcontractors, or their respective personnel be liable to Company for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Company Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement. In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, you agree that the aggregate liability of SCP, its subsidiaries and subcontractors, and their respective personnel for any Company Claim shall

Avenger Flight Group
January 14, 2026

not exceed an amount that is proportional to the relative fault that the conduct of SCP and its subcontractors bears to all other conduct giving rise to such Company Claim.

18.  Expert Witness Services.  Unless specifically included in the description of Services contained in the Engagement Letter.  It is understood that the engagement of SCP and/or SCP Personnel to provide services as an expert witness, with respect to written reports, testimony or otherwise, in connection with or related to any administrative or judicial proceeding, or perform any level of related investigation (collectively, "Expert Witness Services"), is excluded from the definition of Services in this Agreement.

19.  No Expert Advice on Securities Matters.  SCP is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any Company filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

20.  No Improper Purposes.  Under no circumstances will SCP or SCP Personnel abide by, assist or aid, directly or indirectly, any request by Company to violate or aid any violation of any state or federal statute, securities law, common law or regulatory rule or the terms and conditions of any loan agreement, security agreement or similar agreement to which the Company is a party.  No person on behalf of the Company may take any action to impede SCP or SCP Personnel from communicating with Company and appropriate authorities regarding a possible violation of a state or federal statute, securities law, common law or regulatory rule or the terms and conditions of any loan agreement, security agreement or similar agreement, including enforcing, or threatening to enforce, any confidentiality agreement, the confidentiality provisions of the Standard Terms or termination of this Agreement with respect to such communications if SCP determines, in its discretion, that any such request exposes SCP to any potential liability or harm to its professional reputation.

INDEMNIFICATION

21.  Indemnification, Generally.  As part of the consideration for SCP's agreement to furnish the Services, Company agrees to indemnify and hold harmless CRO, all SCP Personnel and SCP and its owners, partners, members, managers, officers, directors, agents, employees, consultants, attorneys and agents and any successors or assigns thereof (each, an "SCP Indemnified Party") to the fullest extent lawful from any and all claims, liabilities losses, damages, debts, judgments and/or expenses or actions (collectively, "Indemnified Claims") in respect thereof, incurred, related to or arising out of or in connection with the Services, the Engagement and/or this Agreement, including without limitation, any and all such SCP Indemnified Parties' reasonable costs, fees and expenses incurred in connection with investigating, preparing, defending, or settling any Indemnified Claim arising from or relating to such liabilities, including all of such SCP Indemnified Parties' reasonable legal fees and expenses; provided, however, that the Company shall not be responsible for any Indemnified Claim to the extent, and only to the extent, that it is finally and judicially determined by a final, non-appealable Court Order, that such Indemnified Claim was caused primarily due to such SCP Indemnified Party's bad faith, willful misconduct or gross negligence.  The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to SCP at common law or otherwise, (ii) shall survive the completion of the Engagement, as amended, modified or extended, and/or the termination of this Agreement, (iii) shall apply to any modification of this Agreement or revisions to the Services, and (iv) shall be binding on any successor or assign of Company and its successors or assigns.

22.  Indemnification of CRO and SCP Personnel Acting as Officers.  To the extent that CRO and, as the case may be, any SCP Personnel is acting as an officer of the Company pursuant to the description of Services, in addition to any other indemnification provided in this Agreement, the Company further agrees to indemnify the CRO and the SCP Personnel acting as an officer(s) of the Company, to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the CRO and/or the SCP Personnel.  The CRO and SCP Personnel shall be covered as an officer under the Company's existing director and officer liability insurance policy and such policy shall have coverage and limits acceptable to SCP.  A certificate of insurance evidencing such coverage shall be furnished promptly to SCP and as a condition of the Effective Date occurring.  If no such policy exists prior to the Effective Date, the Company shall obtain such D&O policy prior to the Effective Date.  The Company shall give thirty (30) days prior written notice to SCP and to CRO of cancellation, non-renewal, or material reduction in coverage, scope or amount of such director and officers liability policy.  The Company shall purchase a "tail" on such directors and officers insurance policy upon the request of SCP.  Regardless, the Company shall also maintain such applicable insurance coverage for the CRO and SCP Personnel for a period of not less than six (6) years following the date of termination of the Services.  The provision of this Clause is in the nature of a contractual obligation and no change in the applicable law or the Company's charter by-laws or other organizational documents or policies shall affect the CRO's or SCP Personnel's rights hereunder.  This obligation shall be an administrative obligation and remain in effect regardless of the conditions upon which the Engagement concludes and/or this Agreement is terminated.

RELATIONSHIP OF THE PARTIES

23.  Independent Contractor.  SCP is an independent contractor under this Agreement.  This Agreement is not intended to create and does not create an employment agreement. No one on behalf of SCP, nor any members, managers, directors, employees, agents, independent consultants or contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of Company unless expressly agreed to by SCP – it being understood that the CRO is, upon proper appointment by the Company, an officer of the Company.  As an independent contractor, SCP will have exclusive control over the management and operation of SCP, including hiring and paying the wages or other compensation of its personnel.  Unless expressly provided otherwise in the Agreement, SCP and the SCP Personnel that provide services hereunder may also provide services to other past, present or future SCP clients in connection with unrelated matters.  In addition, SCP may utilize the services of its own employees or services of qualified independent contractors to perform this Agreement in addition to the SCP Personnel.

Avenger Flight Group
January 14, 2026

24.  No Fiduciary Relationship with CRO Support. Nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between the Company, including without limitation, the Company's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand; and SCP, CRO Support, affiliated, consultants, members, control persons, shareholders, employees, representatives, attorneys, agents, successors or assigns, on the other hand.  The foregoing sentence does not apply to the CRO who will provide Services in a fiduciary capacity.

25.  No Agency Relationship.  Except as set forth in this Agreement, the Services are not intended to and do not create an agency relationship between Company and SCP.

26.  No Tenancy Created.  If SCP is provided with access to or use of Company's facilities for the purpose of performing the Services, such facilities may not be dedicated solely for SCP's use and SCP will not be deemed a tenant of Company with respect to such facilities.

27.  Non-Exclusivity.  SCP may (i) provide any services to any person or entity in matters or engagements unrelated to this Engagement, and (ii) develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the Services, provided that, SCP complies with its obligations of confidentiality set forth hereunder.

CONFLICTS

28.  Future Conflicts.  SCP is retained by new clients in the ordinary course of its business.  As a result, SCP cannot assure that, following the completion of our internal conflict search in connection with the Engagement, a new engagement for or involving one of the Company's creditors or other parties-in-interest or their respective attorneys and accountants will not be accepted by SCP or its affiliates.  Should any potential conflict come to the attention of SCP, we will endeavor to resolve such potential conflict and will determine what action needs to be taken.  You agree that you will inform us of the parties-in-interest to this matter or of additions to, or name changes for, those parties-in-interest whose names you provided.  SCP's determination of conflicts is based on the substance of the work to be performed on an engagement as opposed to the parties involved.  It is possible that some of SCP's past, present or future clients will have disputes with and other matters relating to Company, during the course of and subsequent to this Engagement.  As a condition of this Engagement, Company agrees that SCP may be engaged by parties with interests that are adverse to and may not be consistent with the interests of Company.  SCP reserves the right to accept engagement with other parties consistent with its internal, prior practices without objection by Company.

CONFIDENTIALITY

29.  Duty to Maintain Confidentiality.  SCP shall keep as confidential all non-public information received in conjunction with the Engagement, except: (i) as requested by subpoena or equivalent judicial process by the Company or its legal counsel or any successor in interest to the Company, including, but not limited to a chapter 11 trustee, a chapter 7 trustee, a liquidating trustee under a plan of reorganization or liquidation, a receiver, the assignee under an assignment for the benefit of creditors, the acquirer of the Company's assets, or a committee appointed in any bankruptcy case of the Company ; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this Engagement to the extent that such disclosure is (a) reasonably determined by the SCP to be in furtherance of its duties to Company and not otherwise in contravention of applicable disclosure rules and/or an express direction of the Company or (B) with a person that has agreed to be bound by confidentiality.  All obligations as to non-disclosure shall cease to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.  To the extent documents are requested pursuant to (i) or (ii) above, SCP shall produce any and all documents that are responsive to a subpoena or demand for production of documents without regard to any type of privilege or confidentiality.  It is the express duty of the Company, and not SCP, to object to a subpoena or demand for production of documents if the Company wishes to maintain any documents confidential or otherwise prevent the production of the same.

30.  Disclosure.  To the extent that, in connection with this Engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"), it will not disclose such information to any third party without the disclosing party's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care.  The disclosing party hereby consents to the receiving party disclosing such information:  (i) to subcontractors, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this Clause; (ii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iii) to the extent such information (a) is or becomes publicly available other than as the result of a disclosure in breach hereof, (b) becomes available to the receiving party on a non-confidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder.  Nothing in this Clause shall alter Company's obligations under any other Clause.  SCP, however, may use and disclose any knowledge and ideas acquired in connection with the Services, to the extent they are retained in the unaided memory of its personnel.  Further, SCP and its affiliates and related entities shall have the right to use Company's name as part of a general Company listing and as a specific citation in proposals or similar directed marketing efforts.

31.  Subject Tax Planning Advice.  No term of this Agreement is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice").  Notwithstanding anything herein to the contrary, no provision of the Agreement shall place any limitation on Company's disclosure

Avenger Flight Group
January 14, 2026

of any Subject Tax Planning Advice. In the event of any unauthorized reliance on any Subject Tax Planning Advice by a Third Party, Company agrees to indemnify and hold harmless SCP, its subcontractors, and their respective personnel from any and all claims of a Third-Party, liabilities, costs, and expenses including attorneys' fees and expenses as provided for in the "Indemnification" Section of the Standard Terms.

TERMINATION

32.   Termination with Notice.  Any party to this Engagement may terminate the Engagement upon thirty (30) days prior written notice to the other party(ies). Upon receipt by the non-terminating party of such written notice, SCP will stop all work immediately. Upon any termination of this Engagement, SCP shall be entitled to all incurred and unpaid fees for Services, other fees and expenses described in the Agreement.

33.   Termination at Completion of Engagement.  Unless terminated sooner as set forth herein, this Agreement shall terminate upon (i) the completion of the Services and the Engagement and (ii) the payment in full of all outstanding Invoices.

34.   Return of Company Data/SCP Data Destruction Policy.  Upon conclusion of the Engagement, Company may request to retrieve its confidential information, data, information and documents provided to, prepared by or otherwise in the possession of SCP (collectively, the "Company Data") from SCP at no additional charge to Company. Alternatively, Company Data can be returned in a mutually agreed format at a scope and price to be agreed. Regardless, SCP will maintain a copy of Company Data for no more than six (6) months following termination of this Engagement, after which any Company Data not retrieved will be destroyed, subject to applicable law and SCP's internal data retention policy.

MISCELLANEOUS

35.   Collection Costs/Enforcement Action.  If an action or proceeding is commenced by SCP – whether during the Engagement or subsequent to termination – to collect or defend any objection to any Invoice, fee, Reimbursable Expense or cost or enforce any other obligation of Company under this Agreement whether commenced during or after termination of this Agreement (an "Enforcement Action"), Company agrees to pay and reimburse SCP for all reasonable SCP Personnel time, administration costs and expenses, including, attorneys' fees, costs and expenses incurred in connection with such Enforcement Action.

36.   Misc. Fees, Expenses & Costs (Including Discovery Requests).  SCP will be compensated for any SCP Personnel time and expenses, including, attorneys' fees, costs and expenses, that SCP may incur in connection with the Services (whether during the Engagement or after termination of this Agreement) with respect to the responding to discovery requests, subpoenas or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceedings (including, without limitation, those unrelated to the matters that are subject to this Engagement) as a result of, related to or in connection with the Services, the Engagement or this Agreement.

37.   Non-Solicitation.  During the period commencing on the Effective Date and ending one year following termination, the Company shall not, without SCP's prior written consent, directly or indirectly; (i) solicit or encourage any person to leave the employment or other service of SCP or its affiliates; or (ii) hire, on behalf of the Company or any other person or entity, any person who has left the employment within the one year period following the termination of that person's employment with SCP or its affiliates. During the period commencing on the date hereof through and ending one year following termination, the Company will not, whether for its own account or for the account of any other person, intentionally interfere with the relationship of SCP or its affiliates with, or endeavor to entice away from SCP, any person who during the term of the Agreement is, or during the preceding one-year period, was an employee or independent contractor of SCP or its affiliates.

38.   Survival and Interpretation.  All provisions which are intended by their nature to survive performance of the Services and/or the termination of this Agreement, shall survive such performance, or the expiration or termination of this Agreement and remain an independent obligation of Company and of SCP. Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, common law, or otherwise, notwithstanding the failure of the essential purpose of any remedy. Any references herein to the term "including" shall be deemed to be followed by "without limitation".

39.   Assignment.  Except as provided in this Agreement, neither party may assign any of its rights or obligations hereunder (including interests, Claims or Company Claims) without the prior written consent of the other party.

40.   Severability.  If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions shall remain in effect.

41.   Successors and Assigns.  This Agreement shall be binding upon SCP and Company together with their respective heirs, successors, and assignees and any heir, successor, or assignee of a substantial portion of its businesses and/or assets.

42.   Entire Agreement; Bankruptcy Court Order.  Subject to the terms of any order entered by the Bankruptcy Court in the Bankruptcy Case pertaining to SCP and the Engagement or the Services, this Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the parties. This Agreement replaces and supersedes any previous proposal, draft letter of engagement, communication (oral or written), undertaking, representation, or correspondence – whether written or oral, regarding the Services.

43.   Limited Disclosure of Engagement.  Notwithstanding anything herein to the contrary, SCP may reference or list the Company's name and/or logo and /or a general description of the Services in SCP's marketing materials, media, social media, website or in any disclosure to a court of law as appropriate.

Avenger Flight Group
January 14, 2026

44.  Force Majeure.  No party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

45.  Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.  This Agreement may be executed by facsimile signatures or signatures forwarded by email.

46.  No Waiver.  No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a direct or indirect waiver thereof.

47.  Waiver of Trial by Jury.  THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT AND THE SERVICES.

48.  Governing Law and Consent to Arbitration.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of California (without giving effect to the choice of law principles thereof).  ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THE AGREEMENT OR THE ENGAGEMENT THAT IS NOT RESOLVED BY CONSENSUAL AGREEMENT OF THE PARTIES SHALL BE SETTLED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES, WITH A PANEL OF THREE (3) ARBITRATORS, ONE SELECTED BY COMPANY, ONE SELECTED BY SCP, AND THE THIRD SELECTED BY AGREEMENT OF THE FIRST TWO ARBITRATORS.  If either party fails to select an arbitrator within thirty (30) calendar days of the filing of the arbitration, then such party shall have waived the right to select an arbitrator and the other party shall be entitled to select a second arbitrator.  Judgment on any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.  Each of the parties hereby expressly and irrevocably submits to the jurisdiction of the arbitrators for the purposes of any such controversy or claim and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have thereto.  Company waives service of process outside of the United States and consents to service of process in the United States through any of its agent(s) located within the United States.  Notwithstanding the foregoing, nothing herein shall affect the Bankruptcy Court's jurisdiction over matters properly subject to the Bankruptcy Court's jurisdiction..

49.  In the Event of a [Bankruptcy Filing.  In the event the Company determines to commence Chapter 11 proceedings, the Company shall apply promptly to the presiding Bankruptcy Court pursuant to the Bankruptcy Code, applicable rules and procedural orders of the Bankruptcy Court and procedural guidelines for approval of this Agreement, nunc pro tunc to the commencement date of such proceedings, and shall use its best efforts to obtain such Bankruptcy Court approval and authorization.  The Company shall supply SCP and its counsel with a draft of such application and proposed order authorizing SCP's retention sufficiently in advance of the filing of such application and proposed order to enable SCP and its counsel to review and comment thereon.  After the commencement of such Chapter 11 proceedings, SCP shall have no obligation to provide any services under this Agreement unless SCP's retention under the terms of this Agreement is approved in the manner set forth herein by order(s) of the Bankruptcy Court with such order(s) being acceptable to SCP in all materials respects.  SCP acknowledges and accepts that in the event that the Bankruptcy Court approves its retention by the Company, payment of SCP's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court and the Bankruptcy Code, (ii) any applicable fee and expense guidelines and/or order and (iii) any requirements governing interim and final fee applications imposed in the Bankruptcy Case.  The Company agrees that SCP's fees and expenses post-filing, will be priority administrative expenses and that appropriate "Carve-outs" acceptable to SCP will be obtained from any debtor-in-possession financing or existing secured lender to cover all such fees and expenses.  The Company shall consult with SCP as to the amount of "carve-out" for SCP's fees and Reimbursable Expenses.  In the context of a bankruptcy filing, "Reimbursable Expenses" shall include any and all SCP Professional time, attorneys' fees, costs and expenses incurred by SCP in reviewing retention applications, interim and final fee applications and any related or appropriate bankruptcy court pleading of bankruptcy.

[Remainder of page left blank intentionally]

| Fill in this information to identify the case: |
| --- |
| Debtor name  Avenger Flight Group, LLC |
| United States Bankruptcy Court for the:  District of Delaware |
| (State) |
| Case number (If known): _____ |

☐ Check if this is an
amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| 1 | ALLEGIANT AIR, LLC MICHELLE BATHALTER 1201 NORTH TOWN CENTER DRIVE LAS VEGAS, NV 89144 | MICHELLE BATHALTER EMAIL: MICHELLE.BATHALTER@ALLEGIANT AIR.COM | LOANS | | | | $7,786,213.18 |
| 2 | SPIRIT AIRLINES, INC. GARY MCMILLAN, REMA FISHER 2800 EXECUTIVE WAY MIRAMAR, FL 33025 | GARY MCMILLAN, REMA FISHER EMAIL: GARY.MCMILLAN@SPIRIT.COM; REMA.FISHER@SPIRIT.COM | TRADE DEBT | | | | $4,528,143.00 |
| 3 | PEDRO SORS ADDRESS ON FILE | PEDRO SORS EMAIL: ON FILE | UNSECURED NOTE | | | | $2,598,258.00 |
| 4 | PROLOGIS JOHN KRUSZEWSKI PIER 1, BAY 1 SAN FRANCISCO, CA 94111 | JOHN KRUSZEWSKI EMAIL: JKRUSZEWSKI@PROLOGIS.COM | RENT | | | | $990,707.92 |
| 5 | JOHN PINCAVAGE ADDRESS ON FILE | JOHN PINCAVAGE PHONE: ON FILE EMAIL: ON FILE | UNSECURED NOTE | | | | $966,487.00 |
| 6 | ALISON SORS ADDRESS ON FILE | ALISON SORS EMAIL: ON FILE | UNSECURED NOTE | | | | $906,082.00 |

Debtor __Avenger Flight Group, LLC__
    Name

Case number (if known) _____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7 | SADR LOGISTIC SERVICES COMPANY BANDAR MOHAMAD AL SAMAANI ANAS BIN MALEK ST. ALYASMEEN DISTRICT- PO BOX 3164 AL RIYADH, 52354 SAUDI ARABIA | BANDAR MOHAMAD AL SAMAANI EMAIL: BANDER@SADR.COM.SA | RENT | | | | $712,303.20 |
| 8 | BOW SYSTEMS SHEHZAD AHMED MIR 07, ROYAL INN PLAZA KOHISTAN ROAD, MARKAZ F-8 ISLAMABAD, 44000 PAKISTAN | SHEHZAD AHMED MIR EMAIL: SHEHZAD@BOWSYSTEMS.COM | TRADE DEBT | | | | $699,888.75 |
| 9 | BARDOLI HOLDINGS CORP. MARIA ACEVEDO TORTOLA PIER PARK, BUILDING I SECOND FLOOR TORTOLA ROAD TOWN TORTOLA, BRITISH VIRGIN ISLANDS | MARIA ACEVEDO EMAIL: MARIA@ACEVEDOBELT.COM | LOAN | | | | $570,660.00 |
| 10 | RAYMOND JAMES & ASSOCIATES, INC ADAM KAUFFMAN ONE WALL STREET NEW YORK, NY 10286 | ADAM KAUFFMAN EMAIL: ADAM.KAUFFMAN@RAYMONDJAMES.COM | TRADE DEBT | | | | $500,000.00 |
| 11 | FTD SYSTEMS & ASSOCIATES, LLC PEDRO SORS 3113 WOODCREEK DRIVE DOWNERS GROVE, IL 60515 | PEDRO SORS EMAIL: PEDROSORS@FTFSIM.COM | TRADE DEBT | | | | $313,588.78 |
| 12 | VIDA MAR ENTERPRISES LLC LUIS MIER ADDRESS ON FILE C/O HESS LAW FIRM ATTN EPHRAIM ROY HESS 205 DAVIE BOULEVARD FORT LAUDERDALE, FL 33315 | LUIS MIER EMAIL: ON FILE EPHRAIM ROY HESS PHONE: 954-585-8599 EMAIL: ERH@THEHESSFIRM.COM | UNSECURED NOTE | | | | $241,622.00 |
| 13 | ANGELA ANDREA RESTREPO, PA ADDRESS ON FILE | ANGELA RESTREPO EMAIL: ON FILE | UNSECURED NOTE | | | | $241,622.00 |
| 14 | DECATUR BUSINESS CENTER, LLC TERRY YORK 6280 S. VALLEY VIEW BLVD. SUITE 106 LAS VEGAS, NV 89118 | TERRY YORK EMAIL: TERRY@YORKINVESTMENTSLLC.COM | RENT | | | | $102,188.47 |

Debtor __Avenger Flight Group, LLC___  Case number (if known) _____
       Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 15 | VALLEY VIEW OWNER, LLC C/O ALPHA INDUSTRIAL PROPERTIES 1500 NORTH HALSTED STREET 2ND FLOOR CHICAGO, IL 60642<br><br>C/O KKR ASSET MANAGEMENT 600 TRAVIS STREET SUITE 7200 HOUSTON, TX 77002<br><br>C/O JLL INDUSTRIAL PROPERTY MANAGEMENT 2401 CEDAR SPRINGS RD, SUITE 100 – IPM DALLAS, TX 75201 | NEIL KLEIN, COO EMAIL: NKLEIN@ALPHAINDPROP.COM<br><br><br>ASSET MANAGEMENT EMAIL: LINDSEY.WRIGHT@KKR.COM<br><br><br>LINDSEY GRIFFIN PHONE: 214-438-1574 EMAIL: LINDSEY.GRIFFIN@JLL.COM | RENT | | | | $94,943.92 |
| 16 | MULTIPLE PILOT SIMULATIONS (MPS) PHILIP ADRIAN, CEO KONINGIN WIHELMINAWEG 449 GROENEKAN, 3737 BE THE NETHERLANDS | PHILIP ADRIAN, CEO PHONE: +31 346212777 EMAIL: INFO@MPS.AERO | TRADE DEBT | D | | | $89,112.41 |
| 17 | SIMULATOR COMPONENTS, INC. DAN DRAKE 1749 ROSELAWN AVE. WEST MINNEAPOLIS, MN 55113 | DAN DRAKE PHONE: 612-619-1190 EMAIL: DAN@SIMULATORCOMPONENTS.COM | TRADE DEBT | | | | $51,555.55 |
| 18 | DE LA HOZ, PEREZ & BARBEITO, PLLC TONY DE LOS RIOS 2800 PONCE DE LEON BLVD., SUITE 1020 CORAL GABLES, FL 33134 | TONY DE LOS RIOS PHONE: 305-448-5585 EMAIL: TDELOSRIOS@DPBCPA.COM | TRADE DEBT | C, D | | | $50,000.00 |
| 19 | AVIOVISION NV ATTN: DIRECTOR OR OFFICER HERKENRODESINGEL 8/D.3.01 3500 HASSELT BELGIUM | ATTN: DIRECTOR OR OFFICER EMAIL: ACCOUNTING@AVIOBOOK.AERO | TRADE DEBT | | | | $43,437.80 |
| 20 | AE TEXAS ATTN: DIRECTOR OR OFFICER 2170 BUCKTHORNE PL., SUITE 375 THE WOODLANDS, TX 77380 | ATTN: DIRECTOR OR OFFICER EMAIL: CARE@AETEXAS.COM | TRADE DEBT | | | | $36,796.31 |
| 21 | OMEGA AIR, INC CAMERON LESLIE 11827 TECH COM STE 220 SAN ANTONIO, TX 78233-6014 | CAMERON LESLIE EMAIL: CAMLESLIE@OMEGA.AERO | TRADE DEBT | | | | $33,750.00 |

Debtor __Avenger Flight Group, LLC_____    Case number *(if known)* _____
      Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 22 | DUKE SECURED FINANCING 2009-1ALZ, LLC C/O DUKE REALTY CORP. 1301 W. 22ND STREET SUITE 800 OAK BROOK, IL 60523 | MINNEAPOLIS MARKET, VICE PRESIDENT, REGIONAL ASSET MANAGER | RENT | | | | $28,901.02 |
| 23 | ATLAS ELECTRONICS, INC JOHN PAUL KHOURY 2737 IRVING BLVD. DALLAS, TX 75207 | JOHN PAUL KHOURY PHONE: 214-631-2902 EMAIL: JOHNPKHOURY@GMAIL.COM | TRADE DEBT | | | | $26,452.95 |
| 24 | INFINITY JYLP LLC 2257 VISTA PARKWAY SUITE 15 WEST PALM BEACH, FL 33411 | STEVEN E. MCCRANEY PHONE: 561-478-7111 EMAIL: SMCCRANEY@MCCRANEYPROPERTY.COM | RENT | | | | $25,527.11 |
| 25 | KRAUTHAMER & ASSOCIATES LLC ERIC HONG 7101 WISCONSIN AVE., SUITE 1210 BETHESDA, MD 20814 | ERIC HONG EMAIL: EHONG@KAPARTNERS.COM | TRADE DEBT | | | | $25,000.00 |
| 26 | FRONTIER AIRLINES, INC HOWARD DIAMOND, EVP LEGAL 4545 AIRPORT WAY DENVER, CO 80239 | HOWARD DIAMOND, EVP LEGAL EMAIL: HOWARD.DIAMOND@FLYFRONTIER.COM | TRADE DEBT | | | | $10,000.00 |
| 27 | QUALITY BEARINGS ONLINE LTD UNIT 2/3 GELDERD PARK 98 GELDERD ROAD HOLBECK, LEEDS LS12 6HJ UNITED KINGDOM | JADE WENDEL, FINANCE MGR EMAIL: ACCOUNTS@QUALITYBEARINGSONLINE.COM | TRADE DEBT | | | | $9,000.00 |
| 28 | ARAMARK REFRESHMENT SERVICES ACCOUNTS RECEIVABLE 2400 MARKET STREET PHILADELPHIA PA 19103 | ACCOUNTS RECEIVABLE EMAIL: ARS-AR@ARAMARK.COM | TRADE DEBT | | | | $6,767.45 |
| 29 | FIELDFISHER LLP UK MARCEL WILLEMS RIVERBANK HOUSE 2 SWAN LANE LONDON EC4R 3TT UNITED KINGDOM | MARCEL WILLEMS EMAIL: MARCEL.WILLEMS@FIELDFISHER.COM | TRADE DEBT | | | | $6,037.94 |
| 30 | SIM INTERNATIONAL LEASE I B.V. AND AFFILIATES FRANK UIT DEN BOGAARD WATTSTRAAT 7 ASASSENHEIM, NL 2171 TP THE NETHERLANDS | FRANK UIT DEN BOGAARD PHONE: +31 (0) 6 30 578970 EMAIL: FRANK@SIM-INTERNATIONAL.COM | TRADE DEBT | U | | | UNLIQUIDATED |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Avenger Flight Group Mexico II, S. DE R.L. DE C.V.,[1] | Case No. 26-[_____] (___) |
| Debtor. | (Joint Administration Requested) |

**CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)**

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned authorized officer of the above-captioned Debtor, certifies that the following is a corporation other than the Debtor, or a governmental unit, that directly or indirectly owns 10% or more of any class of the corporation's equity interests, or states that there are no entities to report under FRBP 7007.1.

☐ None [*check if applicable*]

|   |   |
|---|---|
| Name: | AFG Mexico Corp. |
| Address: | 1450 Lee Wagener Boulevard |
| | Fort Lauderdale, FL 33315-3558 |

---

[1] The location of the Debtor's corporate headquarters and the Debtor's service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315, and the last four digits of the Debtor's federal tax identification number is 5615.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Avenger Flight Group Mexico II, S. DE R.L. DE C.V.,[1] | Case No. 26-[_____] (___) |
| Debtor. | (Joint Administration Requested) |

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case:

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| AFG MEXICO CORP. | 1450 LEE WAGENER BOULEVARD FORT LAUDERDALE, FL 33315-3558 | 99% |
| AVENGER FLIGHT GROUP, LLC | 1450 LEE WAGENER BOULEVARD FORT LAUDERDALE, FL 33315-3558 | 1% |

---

[1] The location of the Debtor's corporate headquarters and the Debtor's service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315, and the last four digits of the Debtor's federal tax identification number is 1216.

**Fill in this information to identify the case:**

Debtor name     **Avenger Flight Group Mexico II, S. DE R.L. DE C.V.**

United States Bankruptcy Court for the:     DISTRICT OF DELAWARE

Case number (if known)     _____

☐ Check if this is an
   amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐ *Schedule H: Codebtors* (Official Form 206H)
☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐ Amended *Schedule*
☑ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☑ Other document that requires a declaration     **Corporate Ownership Statement, List of Equity Security Holders, and Certification of Creditor Matrix**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     02/11/2026          **X** _/s/ Lawrence Perkins_
                                    Signature of individual signing on behalf of debtor

                                    **Lawrence Perkins**
                                    Printed name

                                    **Chief Restructuring Officer**
                                    Position or relationship to debtor